LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| LUIS ZHININ,<br>*on behalf of himself, FLSA Collective Plaintiffs,*<br>*and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>SISTINA RESTAURANT INC.,<br>    d/b/a SISTINA,<br>CARAVAGGIO, INC.,<br>    d/b/a CARAVAGGIO,<br>and GUIESEPPE BRUNO,<br><br>Defendants. | Case No:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

---

Plaintiff LUIS ZHININ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, SISTINA RESTURANT INC. d/b/a SISTINA, CARAVAGGIO, INC. d/b/a CARAVAGGIO ("Corporate Defendants") and GUIESEPPE BRUNO ("Individual Defendant," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from

Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit, (2) unpaid wages, including overtime, due to timeshaving, (3) unpaid wages due to improper meal credit deductions, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit, (2) unpaid wages, including overtime, due to timeshaving, (3) unpaid overtime wages due to improper overtime rate, (4)  late payment of wages; (5) improper meal credit deductions, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff LUIS ZHININ is a resident of Queens County of New York.

6.      Defendants operate the below restaurants as a single integrated enterprise under the trade names "SISTINA" and "CARAVAGGIO" at the following addresses:

   a)  SISTINA – 24 E 81st Street New York, NY 10028; and

   b)  CARAVAGIO – 23 E 74th Street, New York, NY 10021 (collectively, the "Restaurants").

7.      Restaurants are operated by Defendants as a single integrated enterprise. The Restaurants are commonly owned by the Individual Defendant GUISEPPE BRUNO and are

advertised     on     the     following     websites:     http://caravaggioristorante.com;     and

http://sistinany.com/contact/. Specifically, the Restaurants are engaged in related activities, share

common ownership and common business purpose:

    a. Employees are interchangeable among the Restaurant locations and Plaintiff personally observed co-workers moving between the two locations.

    b. Both Restaurants serve Italian cuisine and are located within a short distance from each other, the Restaurants frequently advertise different dishes and promotions hosted by each other.

    c. Multiple articles from numerous outlets wrote and noted the commonalities between both Restaurants, with Individual Defendant GUISEPPE BRUNO being the owner and face of the Restaurants. **Exhibit A**, **Exhibit B**, and **Exhibit C**.

    d. The Restaurants advertise for each other on the internet and refer to each other as sister restaurant; **Exhibit D**.

    e. Employees were required to deliver supplies to and from the Restaurants.

Although Plaintiff did not work at CARAVAGGIO, it is still appropriately named in this

Complaint through the theory of a "single integrated enterprise". Not only did both Restaurants

share common ownership, but they also shared interrelation of operations, centralized control of

labor relations, and common management as illustrated above. The Restaurants share numerous

commonalities such as purpose that would classify them as a "single integrated enterprise,"

including but not limited to, identical illegal wage and hour policies and interchangeability of

employees. Consequently, the Restaurants and the relevant Corporate Defendants are properly

named on the basis of their outstanding liability to Class Members for whom Plaintiff seeks to represent.

8.      Corporate Defendant SISTINA RESTAURANT INC. d/b/a SISTINA is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 1555 2nd Ave, New York, NY 10028 and with its principal place of business located at 24 East 81st Street, New York, NY 10028.

9.      Corporate Defendant CARAVAGGIO, INC. d/b/a CARAVAGGIO is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business  and an address for service at 23 East 74th Street, New York, NY 10021.

10.     Individual Defendant GUISEPPE BRUNO is an owner and principal of the Corporate Defendants. Individual Defendant GUISEPPE BRUNO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant GUISEPPE BRUNO frequently visited each Restaurant location. Defendant GUISEPPE BRUNO exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determines the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Individual Defendant GUISEPPE BRUNO directly regarding any of the terms of their employment, and Individual Defendant GUISEPPE BRUNO had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

11.    Individual Defendant GUISEPPE BRUNO routinely disciplines employees, including Plaintiff, for actions that he believes are not in alignment with the general business direction of the Restaurants.

12.    Plaintiff personally observed Individual Defendant GUISEPPE BRUNO handle the day-to-day management of the Restaurants. Individual Defendant GUISEPPE BRUNO oversees the general operations of the Restaurants.

13.    Individual Defendant GUISEPPE BRUNO handles all staffing related inquiries including, but not limited to, hiring, firing, scheduling, and pay. Plaintiff went to GUISEPPE BRUNO when he resigned.

14.    At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL and regulations thereunder.

15.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.    Plaintiff LUIS ZHININ brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

17.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs were tipped employees who have been similarly situated, have had substantially similar job requirements and

pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective : (i) unpaid wages, including overtime, due to an invalid tip credit, (ii) unpaid wages, including overtime, due to timeshaving, (iii) unpaid wages due to improper meal credit deductions, (iv) liquidated damages, and (v) attorneys' fees and costs. Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they failed to satisfy all statutory requirements for taking a tip credit.

18.     The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

20.     Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members" or the "Class").

21.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the

position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

23.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices Defendants, as alleged herein, of (1) unpaid wages, including overtime, due to an invalid tip credit, (2) unpaid wages, including overtime, due to timeshaving, (3) unpaid overtime wages due to improper overtime rate, (4) late payment of wages; and (5) improper meal credit deductions. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24.    Plaintiff and the Class suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours

exceeding 20% of the total hours worked each workweek and causing employees to engage in non-tipped and supporting work for a continuous period exceeding thirty (30) minutes per shift,  (iii) failed to properly pay for all hours worked due to timeshaving, and (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period.

25.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

26.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.   Whether Defendants employed Plaintiff and the Class Members within the meaning of New York law;

    b.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants, regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

    c.   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

    d.   Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

    e.   Whether Defendants paid Plaintiff and Class Members the proper wage for all hours worked;

    f.   Whether Defendants paid Plaintiff and Class Members for all overtime hours worked, and at a proper overtime rate;

    g.   Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were taking a tip credit;

    h.   Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties exceeding 20% of each work shift;

    i.   Whether Defendants required Plaintiff and Class Members to engage in non-

tipped duties for continuous periods of time exceeding 30 minutes;

j.  Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Class Members for each payment period under the New York Labor Law;

k.  Whether Defendants compensated Plaintiff and Class Members weekly as required under § 191(a) of the New York Labor Law;

l.  Whether Defendants provided proper wage statements informing (i) Plaintiff and Class Members of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

m.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to Plaintiff and Class Members, per requirements of the New York Labor Law; and

n.  Whether Defendants improperly deducted meal credits from Plaintiff and Class Members.

## STATEMENT OF FACTS

29.    In or about May 2023, Plaintiff LUIS ZHININ was hired by Defendants to work as a busser for Defendants' SISTINA restaurant, located at 24 E 81st Street New York, NY 10028 Plaintiff worked for Defendants until in or around October 2023.

30.    Throughout his employment, Plaintiff was compensated by Defendants at the tipped credit minimum wage of ten dollars ($10.00) per hour, plus tips. FLSA Collective Plaintiffs and Class Members were paid at similar hourly rates.

31.    With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were not entitled to claim any tip credit allowances under the FLSA or the NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter and (ii) claimed tip credits for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (iii) claimed tip credits for all hours worked despite having caused tipped employees

to engage in supporting non-tipped duties for a continuous period exceeding thirty (30) minutes per shift.

32.    From the start of his employment until termination, Plaintiff was scheduled by Defendants to work six (6) days per week, from either 3:00 p.m. to 10:30 p.m. or 4:00 p.m. to 1:00 a.m. each day depending on Defendants' needs. In total, Plaintiff was scheduled to work anywhere from forty-five (45) hours to fifty-four (54) hours on a weekly basis.

33.    When Plaintiff and other tipped employees were scheduled to work the dinner shift starting at 3:00 p.m., service would not necessarily start at that time, as the restaurant opened for dining at 5.00 p.m. in the evenings. Between 3:00 p.m. to 5:00 p.m., tipped employees would be required to engage in side-work, including sweeping/mopping the floor, washing dishes, unloading deliveries, disposing trash, and polishing silverware. Even when service ends, Plaintiff and other tipped employees would be required by Defendants to spend at least two (2) hours performing additional non-tipped duties daily.

34.    At all relevant times, Plaintiff was not compensated at a proper overtime rate for all overtime hours worked during a workweek.

35.    At all relevant times, Plaintiff would not be allowed to clock in until he changed into his work clothes.

36.    The clock in/out machine was located at the basement of the restaurant, which required Plaintiff and those similarly situated to trek across the entire restaurant to make his way to the basement. Plaintiff's manager would routinely stop Plaintiff on his way to clock-in to his shift and require him to do some work prior to clocking in. As a result, Plaintiff has not been compensated for those times he worked off the clock.

37.     Plaintiff observed that other tipped employees (including bussers, servers, runners, bartenders, barbacks) were also required to engage in non-tipped related activities for (i) more than twenty percent (20%) of their working time, and (ii) continuous periods of time exceeding 30 minutes. Even though Defendants required tipped employees to engage in non-tipped activities for (i) hours exceeding twenty percent (20%) of the total hours worked each workweek, and (ii) for continuous periods of time exceeding 30 minutes, Defendants improperly claimed tip credit for all hours worked by tipped employees. Therefore, at all times, FLSA Collective Plaintiffs and Class Members were improperly paid for all hours worked, due to invalid tip credits.

38.     Throughout his employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[1], whether the meals provided satisfied New York State's nutritional requirements containing all four food groups[2], whether employees actually consumed the credited meals or not, and whether employees consumed the credited meals during a reasonable meal period or not. Defendants meal credit deductions were improper because (1) they did not provide a proper meal which includes at least one of the types of food from all four of the following groups: (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish, poultry, dairy, or legumes; and (iv) tea, coffee, milk, or juice; (2) Plaintiff was unable to consume the meals offered as Defendants would only serve leftover pasta every day; and (3) the meals were never offered to Plaintiff during a reasonable meal period as Plaintiff was never provided a proper meal break. As a result, Defendants claimed improper meal credits from Plaintiff every day.

---

[1] 29 C.F.R. § 531.3
[2] NYCRR § 146-3.7

Similarly, FLSA Collective Plaintiffs and Class Members were improperly deducted for meal credits every day.

39.    Throughout his employment, his employment, Defendants failed to properly compensate Plaintiff in a timely manner as required by the NYLL. Under New York Labor Law, all manual worker(s) must be paid on a weekly basis. Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor. Although Defendants' checks to Plaintiff may be dated for the right date, Defendant would often withhold Plaintiff's pay until at least two (2) days after Plaintiff's legally mandated pay date.  As a result, Defendants compensated Plaintiff with his wages approximately up to nine (9) days after the last day worked in his workweek, which violates Labor Law § 191(1)(a), which requires "manual workers" to be compensated "not later than seven calendar days after the end of the week in which wages are earned." Similarly, Class Members suffered from Defendants' failure to compensate them in a timely manner.

40.    Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

41.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

42.    Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi*

*Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

43.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

44.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay

provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

45.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

46.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

47.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

48.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct.,

Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[3]

49.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

50.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[3] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

51.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

52.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

53.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

54.     Whether *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

55.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the

wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

56.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to reflect the actual number of hours worked and also failed to provide Plaintiff and Class Members with proper pay stubs reflecting the tip credits claimed for each pay period.

57.     Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

58.     Defendants knowingly and willfully operated their business with a policy of underpaying Plaintiff and Class Members their proper overtime wages, in violation of the NYLL.

59.     Defendants  knowingly and willfully operated their business with a policy of deducting invalid meal credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

60.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

61.     Plaintiff realleges and reavers all Paragraphs of this class and collective action Complaint as if fully set forth herein.

62.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

63.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

65.     At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked, including overtime compensation for off-the-clock work.

66.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them the minimum wages in the lawful amount for all hours worked, and overtime premium in excess of forty (40) hours worked each week, due to time-shaving.

67.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them proper overtime wages due to invalid tip credit deductions.

68.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

69.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

70.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

71.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and overtime premium, and an equal amount as liquidated damages.

72.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

73.     Plaintiff realleges and reavers all Paragraphs of this class and collective action Complaint as if fully set forth herein.

74.     At all relevant times, Plaintiff and the Class members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

75.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and the Class Members the minimum wages for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendants' policy of time-shaving.

76.     At all relevant times, Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper minimum and overtime wages due to invalid tip credit deductions.

77.     At all relevant times, Defendants willfully violated Plaintiff and Class Members' rights by failing to pay them their overtime wages at a proper overtime rate, in violation of the NYLL.

78.     At all relevant times, Defendants willfully violated Plaintiff and Class Members' rights by not compensating them within seven days of the workweek, in direct violation of the NYLL § 191(a)(1).

79.     Defendants willfully violated Plaintiff and the Class Members' rights by refusing to compensate them for off-the-clock hours during which they were required to work.

80.     Defendant willfully violated Plaintiff and Class Members' rights by improperly deducting meal credit for meals below the 12 N.Y.C.R.R. §146 standard.

81.     Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees, in direct violation of the New York Labor Law.

82.     Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class members, as required by New York Labor Law § 195(3).

83.     Due to Defendants' New York Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages and overtime premium, compensation for unpaid off-the-clock hours worked, unpaid overtime premiums, damages for unreasonably delayed payments,  reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LUIS ZHININ, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid minimum wages due to an invalid tip credit, due under the FLSA and the NYLL;

d. An award of unpaid wages due to Defendants' improper meal credit deductions, due under the FLSA and the NYLL;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit and invalid meal credit deductions, pursuant to the FLSA;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit, and invalid meal credit deductions pursuant to the NYLL;

i.   An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

j.   An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

k.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.   Designation of this action as a class action pursuant to F.R.C.P. 23;

m.   Designation of Plaintiff as Representative of the Class; and

n.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: January 12, 2024                     Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:      */s/ C.K. Lee*

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*